With the attorneys who are going to argue the case, please approach the podium. Identify yourselves and the party you represent and indicate to the court how much time is left for your argument. Good afternoon, Sabrina Harrell. That microphone is for recording purposes. It doesn't amplify your voice. So if you want to be heard, you're going to have to keep your voice real loud. Good afternoon, Sabrina Harrell, on behalf of Denise Riley, the appellant defendant. Really, you're going to have to keep your voice up. How much time would you like to argue? Fifteen minutes, two minutes rebuttal. Sure. Good afternoon, Joseph Herbis, on behalf of the plaintiff, Appellee Midfirst Bank. I expect fifteen minutes. Very well. Ms. Harrell, do you want to start, please? We have some interested lawyers in the back of the courtroom, and they really do want to hear what you have to say, so shout it loud and be proud. Okay, I will. Thank you, Your Honor. Good afternoon, once again. May it please the Court, I am Sabrina Harrell, the attorney for the defendant appellant Denise Riley, the borrower in this subject foreclosure action. Defendant requests that this Court reverse the rulings of the lower court, particularly the rulings on a summary judgment, and also the denial of the defendant's motion to reconsider, as well as the defendant's motion to dismiss. The defendant also requests that this Court vacate the order confirming the foreclosure sale. Although we make those requests, this case really comes down to two key issues. The first issue is whether a word written on an endorsement, on a mortgage note, whether or not that is a cancellation of the endorsement, or whether it is a specific endorsement. The second issue is whether or not the plaintiff probably abided by him in considering Mrs. Riley's loan modification request. Before addressing those key points, I would like to address the standard of review issue. It seems that pursuant to the briefs, the parties are in agreement that the standard of review on a summary judgment order and on a motion to dismiss is a de novo review standard. It appears that we inadvertently did not address the standard of review in the brief as it relates to an order confirming a sale. Do you have a different tape? No. That's fine. You can go on. Okay. Actually, we are in agreement that pursuant to the Household v. Lewis case, that standard of review is abuse of discretion. Okay. Well, then you can move on to some other topic. Well, we do differ when it comes to the standard of review with regards to a motion to reconsider. So plaintiff's position is that abuse of discretion is the proper standard of review. It is our position, however, that even though abuse of discretion is the proper standard when a motion to reconsider is based upon a change in the law that occurred after the ruling, or if new evidence is introduced, then abuse of discretion would be correct. But that's not the case with our motion to reconsider. We do not introduce – our motion to reconsider is not based on new evidence or a change in the law. Therefore, we believe it's the de novo standard applies. Your motion to reconsider was just that they made an error of law. Correct. Okay. Okay. So moving back to our first key issue, and that is whether or not a word written within – I'm sorry, I'm a little nervous. Whether or not a word written within an endorsement on a note makes it a specific endorsement. Are you talking about the word boy? Yes. Right. Exactly. So what occurred here is that at the filing of the complaint, the plaintiff did attach a note to the complaint. Okay. The note bears two endorsements. The first endorsement is from the original lender anchor mortgage to the Yassini fleet mortgage. Okay. There's a second endorsement on the note, and it says payable to, and then there's an empty space where you put your party that you're endorsing to, and it is signed by a representative of fleet mortgage. It appears that it says void, V-O-I-D. Okay. But that text is specifically written in the space specifically allocated for you to write the name of the party that you are endorsing to for a specific endorsement. Okay. It is not written over the text of the endorsement. The endorsement is not X'd out. Plaintiff takes the position that the endorsement is a revocation because it's written in the text, over the text, and it says throughout their brief that it's written over the text, it's written over the text. But if you take a look at the record, page 53 of the record, it's pretty clear that it's not written over the text. It's actually specifically written in the spot allocated for you to write the name of whatever it is you want to transfer to. Can I ask you a question? Yes. Does this issue go away? What's your response to the plaintiff's suggestion that this endorsement issue doesn't matter, in light of the fact that there were loan modification agreements directly between your client and the bank? Our position is that the loan modification is that our client is entering into a loan modification with whomever says they have the right to proceed. At that time, that's long before my client has a note in hand that shows something in opposition to that. I believe the modification, the last modification was in 2010, three years before we had a note in this case showing a conflict with the endorsements. Do you know when the Boyd stamp was put on the note? I'm sorry? When was the Boyd stamp put on the note?  So how do you know that it took place before the loan modification or after the loan modification? How do you know? We're not saying if it did or did not. What I'm saying is that at that time, at the time that she entered into the loan modification, that information would have not been before hers. If it was before her, what's your point? What's the importance? Why is that important? It's important because if there's a specific endorsement, then it means that the enlarge is invalid. And it means that the plaintiff does not have standing. So how does that affect the subsequent loan modifications? I guess, as Judge Lipa, in my question. How does it affect whether or not the parties can enter into a subsequent loan modification? Your client had two loan modifications, right? Three. Three. What if the Boyd stamp was put on that note prior to all three of the loan modifications? What effect does that have on the loan modifications that ultimately resulted in a nonpayment of the note and mortgage? And it resulted in the foreclosure. That's the question. So the prior modification, I think this would really only go towards the last modification. And I would think that that modification, therefore, would be void because that party would have not, the party offering the modification would not have been able to offer and enter into that modification. Continue. Okay. So addressing the issue of the HAMP modification itself, which is the second key issue, I don't think there's a dispute as to who the servicer of the loan was. And the borrower had many communications with the servicer of the loan and requested a HAMP modification. Well, requested a modification. Did not necessarily know whether it's under HAMP or not. Okay. So the first two modifications were very early on, I believe around 2006. Okay. It's the last modification that's of issue because that's the modification in 2010 after HAMP was enacted, after the servicer entered into a servicer participation agreement to abide by HAMP. But she was not offered a HAMP modification. You don't argue that there's a private right of action under HAMP, that that gives her a right to proceed. You're proceeding under the Consumer Fraud Act. Is that correct? Correct. Correct. Yes. Okay. So with the modification, the last modification, the issue actually started in 2009 when she first began to make those requests. She didn't make much progress. First she was told she made too much money. Then she was told, let me back up, she was told she made too much money because they calculated in overtime income, in which the HAMP guidelines make it clear that you cannot include overtime income because it's just that. It's here today. It's gone tomorrow. You have to deal with the actual income that you're pretty confident you're going to receive. So she was denied on that ground. Okay. She did seek some help through Operation Push and do Genesis, and eventually there was this third modification in February 2010, once again after the servicer had a duty to comply with HAMP, but did not. So this third modification, the payment, principal, interest taxes, and insurance is 50 percent of the income, which is unreasonable, which is the reason why HAMP was created to pretty much pull it in to make it more reasonable for people to be able to actually make a payment based on their income, with a cap of 31 percent is what the principal, interest taxes, and insurance. 31 percent of your income, the payment amount cannot be higher than that. And she made no, there was no progress with that. Instead, she was offered this other modification and told, this is the best you can do, and if you want to keep your home, in which certainly most borrowers do, you know, this is not investment property. This is where she lives. Then, unfortunately, you do proceed because you're doing whatever you can to save your home. But since the commencement of this action, there was another request for a modification under HAMP. This time, a modification did come back to her under HAMP, but once again, it did not comply with HAMP. It was very similar to the fire modification, once again, at 50 percent of her income, not at 31 percent of the income. So it's our position that the plaintiff has failed to actually abide by the guidelines of HAMP. But that's not a claim, is it? The claim has to be fraud. There is a fraud claim, yes, yes. I mean, under the Consumer Fraud Act, there has to be fraud. Yes. That's what you're alleging. Yes, that is what we're alleging. And we're alleging because they had deceived her. They deceived her in 2010 when they said, this is the best we can do, right? We can't give you – By telling her she's not eligible. That's the fraud, basically. Tell her that she's not eligible, and this loan here is the only loan that you're eligible for. It's the best that we can do. And this has continued up until now because she did reapply again. Those are the main two key issues that we feel this case resolves around. Thank you. Thank you. Good afternoon. May it please the Court. I'll address the two issues that the opponent raised. I will address the first, the endorsement with the word void. A review of the note shows that the word void is written. You guys can look at the record and certainly see. We've cited the cases that have referenced that the word void has been a term for revocation. Most importantly – It is written in a weird place, though, here, isn't it? It is written in a weird – I don't know that it would say it would be weird. I do a lot of foreclosures, and that is very common. It is? They write it right there? Like it would be a person? Yes. Well, I understand the argument being made by Riley's counsel. Right. The appellant here has argued that the endorsement by Fleet containing the word void written across it demonstrates an intent by Fleet to negotiate the instrument to a person named Void. What's your position on that? Our position is if you look at the note in its entirety and the surrounding facts, that simply cannot be the case. The borrower has never alleged that an entity under the name Void has ever contacted the borrower for payment. She's never alleged that she paid an entity named Void. And most importantly, the note is a negotiable instrument under the Uniform Commercial Code. And in order to have a transfer, you need to have a negotiation, which requires not only an endorsement but a physical transfer of the instrument. And if it's been undisputed, then my client is in physical possession of the original note. We've attached it to the complaint. We've attached it by affidavit to a motion for summary judgment. And the note contains an allonge after the endorsement for Void, an allonge that transfers the instrument. And it has Washington Mutual and the various entities successor by merger to Fleet Mortgage. And also in the record, the merger documents between Fleet Mortgage and Washington Mutual were filed in the case. So our position is simply that the allegation that an entity named Void is the current holder of the note, based on the totality of the circumstances, simply cannot be true. Are you also relying on the loan modifications? Is that a separate argument or is that? Actually, that's even further support. I'm glad you brought that up. That's even further support that our client is the holder. The loan modification, the last two loan modifications are both signed by my client, the plaintiff, and also by the defendant borrower. So there are two loan modifications between the parties. Ms. Riley made payments under those modifications. And only after she defaulted under the loan modification did she raise this claim that my client then lacks standing. And the case law in the First District is clear that if you're going to allege that another party lacks standing in a mortgage foreclosure action, you have to allege facts and provide evidence showing who that other entity is. And in this case, when we move for summary judgment, the borrower did not provide any evidence that an entity named Void had any type of interest, never contacted the borrower, she never intended payments to an entity named Void. The undisputed facts are that she paid my client. It would be an unfortunate name, Void. I have a question sort of related. Both you and the defendant seem to agree that this was a 2615 motion to dismiss, but isn't lack of standing an affirmative matter that is actually a 2619 motion? It is. Lack of standing would be another affirmative matter. We conceded because the borrower conceded in their appeal that it was under 2615. But, yes, you're right. If you're going to allege that a party lacks standing, then that would be under 619. And that is her position, really. That's her defense to the foreclosure is you don't have standing to disclose. Correct. Correct. So you're right. It would be also under a 619 standard for the lack of standing argument. Next I'll move to the borrower's allegations regarding HAMP. With respect to the 2010 modification, the borrower has simply not alleged facts or provided any evidence of fraud. When plaintiffs moved for summary judgment, there was a supporting affidavit that detailed that the loan was reviewed. The affidavit went into detail about when the loan was reviewed, what the results were that the borrower wasn't eligible for certain HAMP modifications, and also that the borrower at times declined to apply for loss mitigation. Is your bottom line on that that even if it was a claim and all the other procedural matters could get around it, it was true? What we told her was true. She was not eligible for a HAMP modification. Is that the bottom line? That's the bottom line. And when the plaintiff moved for summary judgment, the defendant had an opportunity to present evidence to contradict that allegation. And there was no evidence. It did a lot of general conclusions saying that the payment was more than 50 percent of her income, but nowhere does she ever provide the application, what her income is, or really any supporting documents whatsoever to support the claim. And it's simply when a motion for summary judgment is filed, the burden shifts to the non-movement to provide evidence of their case. And in this case, that simply did not happen. All the defendant had was general conclusions without any supporting evidence or any real supporting facts. With respect to the HAMP modification offer that was made during the pendency of the foreclosure, it was referenced in the appeal brief when the sale confirmation came, the borrower didn't raise the modification that was offered during the foreclosure. The arguments were related to the counterclaim, which was prior to the foreclosure, and which under the McCluskey case cannot be a defense to the sale confirmation. Even if the borrower had raised the argument, though, that the modification offer that was made during the pendency of the foreclosure, even if she had made those arguments, they simply weren't part. She didn't provide any evidence. Just similar to the other part, there's no real facts, no real documents. She doesn't attach a copy of the application. She doesn't attach a copy of what was offered to her. It doesn't explain, other than a general conclusion, that it doesn't comply with HAMP. There's no real allegations or any evidence to support her conclusion. So the plaintiff in this case asks this Court to affirm the trial court orders, affirm the summary judgment order in favor of plaintiff, and affirm the sale confirmation. Thank you. Thank you. Ms. Harrell? Plaintiff states that the cases cited in their brief shows that the endorsement is void. Those cases were the estate of Holmberg and were seamen versus people. And actually those cases say the opposite. Those cases specifically state that the writing has to be over the text. Plaintiff further states that, which we agree, that the UCC requires transfer and an endorsement. But once again, it's our position that there is no endorsement. So at least not the blank endorsement that plaintiff argues that it is. With regards to the HAMP modification, both parties provided affidavits attesting to their positions. And Ms. Riley actually provided two affidavits. And in those affidavits, she did provide and agree with, you know, when she contacted the plaintiff, what occurred in those conversations, what occurred with Operation PUSH, what her income was, and what she was told. So it's untrue that she just made some general vague allegations. She actually does. But did you say why that information made her eligible? Yes, we do say why it made her eligible. We explain what the requirements of HAMP are, or at least were at that time. Because at that time, you had to reside in the property. You had to have a hardship. You had to have a source of income. And all of that is provided for. Those are the only additional things we want to ask. So it is our position, and we ask the court to overturn the rulings of the lower court. Thank you. Thank you. The court appreciates the efforts of both sides in this matter. We will take the appeal under advisement, and you will receive a copy of the decision of the court shortly. Very well. Thank you. We'll stand in recess. Thank you.